THE NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY

*v.*

WALTER E. LAWTON.

On demurrer to a bill for the specific performance of a contract, whereby defendant, among other things, agreed to convey to a railroad company (whose legitimate successor is the complainant) the right of way for its railroad, one

hundred feet in width, over and across his lands, situate &c., and the company, for itself and its successors, covenanted that its railroad should be located and built on the line then already agreed upon by him and the engineer of the company, and designated in the agreement by a reference to a map,—*Held*, that an averment, on "information and belief," that the railroad had been constructed on the line mentioned in the agreement, but whether so or not that it was constructed on a line agreed upon by the defendant as satisfactory, and had been operated ever since on said line, without objection or complaint by defendant, "so far as complainant knows, and as it believes," lacks certainty and explicitness as to the location of the line of the railroad, and as to the description of the premises claimed to be included in the contract.

Bill for specific performance.    On demurrer.

*Mr. T. N. McCarter*, for demurrant.

*Mr. J. W. Taylor*, for complainant.

THE CHANCELLOR.

This is a suit for specific performance of a contract in writing, made by the defendants with the New Jersey Midland Railway Company, by which he agreed to subscribe and pay for one hundred shares of the capital stock of that company; and that, on the location of the line of its railroad as provided in the agreement, and without further consideration than. that which was expressed in the agreement, he would grant and convey to the company the right of way for its railroad, one hundred feet in width, over and across his lands and premises, situate on the island known as "The Little Ferry Farm," near Ridgefield, in Bergen county, and such ground in addition thereto, not exceeding an acre, as might be necessary for depot purposes upon that farm for his accommodation; and the company, for itself and its successors, thereby covenanted and agreed that its railroad should be located and built over and across those premises of the defendant, on the line then already agreed upon by him and the engineer of the company, and designated in the agreement by a reference to a map. And the company also agreed, for itself and its successors, that whenever it should be thereunto requested

by the defendant, it would keep up and maintain a station, and stop certain passenger trains on the premises &c. The bill states that, as the complainant is informed and believes, the railroad was afterwards located and built over and across the defendant's premises mentioned in the agreement, on the line mentioned in the agreement, but that whether the said railroad was located and built upon the line so agreed upon or not, it was located and built upon a line agreed upon and approved by the said Lawton, and with respect to which he expressed himself as entirely satisfied, and has ever since been operated upon said line without objection or complaint from the said Lawton, so far as the complainant knows, and as it believes.

The bill also states that, subsequently to the making of the agreement, the Midland company gave a first mortgage on its railroad and franchises and property of every kind, then acquired or thereafter to be acquired in respect to the railroad, including its rights under those articles of agreement, to George S. Coe and others, trustees, to secure the payment of bonds issued by it to the amount of $3,000,000, or thereabouts; and that the company having failed to pay the interest, the trustees filed their bill in this court for foreclosure of the mortgage, or sale of the mortgaged premises for the satisfaction of the money due on the bonds; and that such proceedings were thereupon had in this court, that afterwards it was decreed that the mortgaged premises, including the rights of the company under the agreement, in respect to the lands therein mentioned, should be sold at public auction for the satisfaction of the money due on the mortgage and other liens referred to in the decree, and that thereupon a writ of *fieri facias* was issued out of this court, under which the mortgaged premises were sold for $2,500,000 to Charles Parsons, who purchased on behalf of himself and his associate holders of the bonds; and that a deed of conveyance was given according to law to him therefor by the master by whom the property was so sold.

The bill further states that Parsons and others, on whose behalf the purchase was made, and who, under the act "concerning the sale of railroads, canals, turnpikes, bridges and plank

roads," and the supplements thereto and amendatory thereof, were constituted a body politic and corporate, and became vested with all the rights, title, interest, property, possession, claim and demand, in law and equity, of, in and to the railroad, with its appurtenances, and all the rights, powers, immunities, privileges and franchises of the Midland company, and afterwards and within the time fixed by the statute, pursuant to the act and its supplements, met and organized the new corporation, by electing a president and board of directors thereof, and adopting as the corporate name "The Midland Railroad Company of New Jersey," and by performing the other things required by the act, and filed a certificate of the organization, under the seal of the new corporation, as required by the act.

It further alleges that afterwards, by virtue of the statute in such case made and provided, the Midland Railroad Company of New Jersey became consolidated with other corporations, thereby forming a new company, under the name of the New York, Susquehanna and Western Railroad Company (the complainant), whereby the complainant has succeeded to all the franchises, property and rights, including all the rights under the articles of agreement of the New Jersey Midland Railway Company and its immediate successor, the Midland Railroad Company of New Jersey.

It further states that there has been no request to keep up a station on the premises of the defendant, or to stop trains there, and that the defendant has not chosen or designated a location for a depot on the premises.

The demurrant insists that the complainant does not sufficiently show its title to claim the relief which it seeks; that it should set out in the bill the mortgage and proceedings in foreclosure and sale, and the conveyance; that it does not allege, in particular, the performance of the requisites to re-organization and consolidation; that the New Jersey Midland Railway Company and the Midland Railroad Company of New Jersey should be parties to the suit, and that the statements of the bill otherwise would not be sufficient if the suit were between the original parties to the agreement, there being no proper allegation that the road

was constructed as provided in the agreement, and no statement of the particular land claimed, and no allegation that the contract was executed by the railroad company.

The bill sets forth the complainant's title to the rights of the New Jersey Midland Railway Company with all necessary averments. It states that the defendant entered into the agreement with that company; that the agreement was in writing, and that he thereby covenanted and agreed with that company that, for the consideration expressed in the agreement, he would, on the location of the line of its railroad as thereinafter provided, and on its request, convey to it the right of way, one hundred feet wide, across his land. It sets out the agreement *verbatim*, and the agreement purports to be signed by the company, by its president, and sealed with its seal. It states (and with commendable brevity) that the company mortgaged its property, including its rights under the agreement, the foreclosure proceedings and sale and purchase, and the re-organization and consolidation, with all necessary averments. In deducing its title under the foreclosure, it was necessary to set out the agreement, the mortgage (the latter to such an extent as to show that the rights of the New Jersey Midland Railway Company under the agreement were mortgaged thereby) and the fact of the foreclosure and sale and conveyance. It has done all this so far as was necessary. The statements of the bill show that the rights of the New Jersey Midland Railway Company under the agreement passed away from it by the foreclosure and sale, and that it was wholly divested thereof, and that they were transferred to the purchaser, the new organization. As to the new organization and consolidation, the averments are sufficient. If the defendant desires to contest the complainant's claim thereunder, he will be put to his plea. Neither the New Jersey Midland Railway Company nor the Midland Railroad Company of New Jersey is a proper party to the bill.

By the agreement, the defendant agrees to convey land for the right of way, and for the depot. The bill alleges performance on the part of the complainant and its predecessors, and prays for a specific performance of the agreement on the part of the

defendant, and the complainant tenders itself ready to perform the agreement on its own part. It does not ask for a conveyance of the land for a depot, and it is urged, on behalf of the defendant, that the agreement is entire to convey the land for the right of way and for the depot, and that performance of part only—the conveyance of the land for the right of way alone—cannot equitably be asked. But the bill alleges that the railroad company has never been requested to establish the depot, and it surely would not be equitable to require the defendant to convey the land for a depot until such time as he shall require the establishment of the depot. The bill, however, is defective in the statement as to the location and building of the railroad over the defendant's land. It does not allege positively, but only on information and belief, that the road was located and built on his land at all. It avers, on information and belief, that it was built on his land on the line mentioned in the agreement, and adds that, if it was not built on that line, it was located and built on a line which was agreed upon and approved by and satisfactory to the defendant, and has ever since been operated upon such line without objection or complaint from him, so far as the complainant knows, and as it believes. The bill lacks certainty in the statement of this important matter. It should show, by specific and positive averment, that the road was located as provided for in the agreement, or, if any other location was substituted therefor, it should be so alleged, positively and explicitly. And the bill should state, by such description as to identify it, the land over which it claims the right of way. When the line is described, the claim of fifty feet on each side of it will be definite enough without further description.

The demurrer will be allowed, with costs, but the complainant will have leave to amend.